# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRANCE TOLEFREE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL[1], Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | No. 16 C 7103 <br><br> Magistrate Judge Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Terrance Tolefree ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for child disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) and 138(c)(3). For the reasons that follow, Claimant's memorandum, which this Court will construe as a motion for summary judgment [6], is denied and the Commissioner's response, which this Court will construe as a cross-motion for summary judgment [26], is granted.

## I. BACKGROUND

## A. Procedural History

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

Claimant filed his applications for Child's Insurance Benefits ("CBD") on June 29, 2012, alleging disability beginning on January 1, 1998 due to social/emotional problems, anxiety/panic attacks, depression/learning problems, and problems with his knees that caused issues walking and standing. (R. 311-14, 343.) Claimant's application was denied initially and on reconsideration. (R.124-48.) Claimant requested a hearing before an ALJ, which was held on March 21, 2014. (R. 30.) A supplemental hearing was held on August 12, 2014. (R. 78.) On December 19, 2014, the ALJ issued a written decision finding that Claimant was not disabled. (R. 13-23.) On May 16, 2016, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 1-3.) This action followed.

**B. Medical Evidence[2]**

    **1. Treating Physician**

On September 8, 2009, Sanker Jayachandran, M.D., submitted a statement that he had diagnosed Claimant with generalized anxiety disorder. (R. 457.) Claimant was being treated with Lexapro. (*Id.*) On September 17, 2009, Claimant reported anxiety with testing. (R. 835.) He also reported having good grades and having close friends. (*Id.*)

From January 2011 through March 2014, Claimant was periodically treated at Confidential Care. (R. 816-35, 855-67.) He was reported to have problems with sleeping, rapid heartrate, and anxiety. (R. 828-29, 835.) He was not on any medication. (*Id.*) In November 2011, his mood was noted as depressed and anxious. (R. 831.) His

---

[2] The Court notes that there is also evidence of knee issues in the record. The ALJ found these impairments non-severe and Claimant does not object to the ALJ's conclusion.

Global Assessment of Functioning ("GAF") score was 60, but it was expected to be 70 at discharge. [3] (R. 833.)

On June 29, 2012, Claimant met with Dr. Jayachandran and reported depression and anxiety.[4] (R. 823, 825.) The treatment note indicated that Claimant was not taking any medication. (R. 824.) Medication and individual therapy were recommended. (R. 827.) On August 27, 2012, Claimant reported that Prozac was working well. (R. 821.) He was also taking Viibryd. (R. 856.) On November 2, 2012, Claimant denied any side effects from the medication and reported improvement in his appetite and sleep. (R. 821.)

On May 10, 2013, progress notes stated that Claimant's attention and concentration were poor, and his mood and affect were anxious and depressed. (R. 818-19.) Similar findings were again noted on May 14, 2013, and on October 4, 2013. (R. 816-17, 864-65.) On December 27, 2013, Claimant reported doing well but had been out of Viibryd for one week. (R. 861.) In February and March 2014, Claimant reported feeling down. (R. 857-60). Once again, his attention and concentration were poor, and his mood and affect were depressed and anxious. (*Id.*)

On March 13, 2014, Dr. Jayachandran completed a medical source statement.[5] (R. 850-52.) He noted that Claimant's current GAF score was between 41-50. (R. 850.) The doctor opined that Claimant would be moderately limited in all the listed skills required for unskilled work because of his anxiety and depression. (R 851). In addition,

---

[3] A score between fifty-one and sixty represents "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *See Steele v. Colvin*, No. 14 C 3833, 2015 WL 7180092 at *1 (N.D. Ill. Nov. 16, 2015). Anything above sixty would indicate mild symptoms. *Id.*
[4] A different treatment note seemed to attribute Claimant's depression, in part, to his knee injury. (R. 822.)
[5] Dr. Jayachandran also submitted a less detailed statement in May 2013, in which he opined that Claimant's condition prevented him from sustaining gainful employment. (R. 837.)

the doctor indicated that Claimant's symptoms would interfere with his attention and concentration more than 20% of the day. (R. 852.) He also believed that Claimant was moderately limited in daily activities, social functioning, and concentration, persistence, or pace. (*Id.*) Dr. Jayachandran further opined that Claimant would experience continual episodes of deterioration or decompensation in a work-like setting that would cause him to withdraw from that situation or to experience exacerbation of signs and symptoms. (*Id.*) Likewise, the doctor stated that Claimant would miss more than three days of work a month. (R. 851.)

### 2. Agency Physicians

On September 18, 2012, Claimant underwent a consultative exam ("CE") with Jeffrey Karr, Ph.D. (R. 808-12.) Claimant stated that he was attending a junior college and would drive there two days a week. (R. 809.) His mother reported that she had to wake him up, he resisted bathing and dressing, and that he was reluctant to leave the house. (*Id.*) She also stated that he had a friend visit him about once a week. (*Id.*) Claimant reported being depressed because he felt like a failure and because he "[did not] catch on." (R. 810.) He also reported being self-critical, withdrawn and hopeless, and having trouble sleeping. (*Id.*) Dr. Karr documented that he presented as "passive, constricted, withdrawn." (R. 812.) Claimant was diagnosed with dysthymic disorder and generalized anxiety disorder. (*Id.*)

On October 4, 2012, DDS reviewing source Donald Cochran, Ph.D., opined that Claimant had moderate limitations in his activities of daily living, maintaining social functioning, and concentration, persistence, or pace. (R. 130-33.) Dr. Cochran noted

4

that Claimant did not have any episodes of decompensation. (*Id.*) On April 4, 2013, DDS reviewing source Terry A. Travis, M.D., reached a similar conclusion. (R. 143-47.)

### 3. School Records

Educational records noted that Claimant was receiving special education services and social work services for an emotional disturbance. (R. 331, 453, 471.) School records indicated that he was a good student, had excellent classroom behavior, was very respectful, and had many friends. (*Id.*) In addition, the records noted that he was cooperative, courteous, prepared for class, and got along with others and was able to block out distractions. (R. 451.) Claimant participated in football and basketball. (R. 529.) In 2009, education notes indicated that Claimant did not meet the criteria for emotional disability. (R. 524.) After graduating, Claimant enrolled in a community college. (R. 444-45.)

## C. Medical Expert Testimony

On March 21, 2014, at Claimant's first hearing, Michael E. Cremerius, Ph.D., a medical expert ("ME") testified. (R. 180.) He opined that Claimant would have marked limitations in social functioning and in concentration, persistence, or pace. (R. 69.) His decision was based on a combination of testimony and the evidence, including Dr. Jayachandran's opinion. (*Id.*) A second ME, Ellen Rozenfeld, Psy.D., testified at the supplemental hearing. (R. 303-04.) She stated that Claimant had moderate limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (R. 108-09.) She further testified that Claimant was limited to simple/routine tasks because of his learning problems and shy nature. (R. 110.) Dr. Rozenfeld noted that Claimant could handle incidental questions,

could work in proximity to co-workers without joint or shared tasks. (*Id.*) Likewise, she opined that Claimant could handle occasional contact with supervisors and would do best in a predictable work setting where changes were routine in nature. (*Id.*)

**D. Claimant's Testimony**

Claimant testified that he struggles with being around people. (R. 35.) He stated that he does not have friends, and that he had one friend in high school. (R. 39.) To cope with his social anxiety, Claimant attempted to play sports, but he ultimately quit. (R. 35, 39.) He explained that one of the reasons he quit was because he struggled with following directions and was not catching on fast enough, resulting in frustration.[6] (R. 42.)

Claimant also testified that he has trouble following directions and staying on task. (R. 42-43, 48.) He said that his inability to stay on task leads to frustration, which in turn leads to him getting upset and shutting down. (R. 48-49.) He stated that he is afraid to ask for help. (R. 42.) According to Claimant, he received a lot of one-on-one help in high school. (R. 41,49.) Likewise, Claimant stated that he stopped going to junior college, in part, because he did not feel comfortable and would become frustrated. (R. 34, 46.) Claimant testified that he received certification as a nursing assistant but had help from his siblings. (R. 35, 42, 88-89.) He further testified that he does have a driver's license but does not drive. (R. 36-37.) He also testified he was not taking medication. (R. 84.)

**II. Analysis**

**A. Standard of Review**

---

[6] His father, however, testified that Claimant was a starter in both sports, and that he did not play all four years because of injury. (R. 61-62.)

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)(citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence[,]" and we will remand if the Commissioner's decision "lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)(per curiam)(quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for CDB[7], a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability

---

[7] The analysis for CDB claims is essentially the same as it is for Disability Insurance Benefits ("DIB") or Supplemental Security Income Benefits ("SSI"). With CDB claims however, the Claimant must establish disability before turning twenty-two. 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350; *See Walton v. Berryhill*, No. 1:15-CV-1736-DKL-JMS, 2017 WL 1077677, at *2 (S.D. Ind. Mar. 22, 2017)("An unmarried

7

to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

     Here, the ALJ applied the five-step process in denying Claimant's application for benefits. At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since his alleged onset date of January 1, 1998. (R. 15.) At step two, the ALJ determined that Claimant had the following severe impairments: depression, learning disability, and generalized anxiety disorder. (*Id.*) The ALJ found that Claimant's knee issues were non-severe impairments. (*Id.*) At step three, the ALJ concluded that

---

dependent child over the age of eighteen years is entitled to receive child's disability insurance benefits based on the earnings record of an insured parent who is entitled to disability benefits if the child has a disability that began before he became twenty-two years old.") In this case, the ALJ found that Claimant was under the age of twenty-two at his alleged onset date. (R. 15.)

Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (R. 16.)

The ALJ went on to assess Claimant's RFC, finding Claimant had the residual functional capacity to perform a full range of work at all exertional levels, except would be limited to unskilled work tasks of a simple, repetitive, and routine nature that could be learned by demonstration or in 30 days or less, that did not require a fast pace, and involved no strict production quotas and no more than occasional decision making or changes in the work setting. (R. 17.) He could maintain occasional, superficial, and incidental contact with the general public and occasional interaction with supervisors and coworkers. He could work in proximity to others but not on tandem or shared tasks, and he could meet end-of-the-day production goals. (*Id.*)

At step four, the ALJ found that Claimant had no past relevant work. (R. 21). At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 22.) Specifically, the ALJ found Claimant could work as an industrial sweeper/cleaner, kitchen helper, and sandwich maker. (*Id.*) Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. We address Claimant's arguments below, ultimately finding that the ALJ's opinion should be affirmed.

**C. The ALJ Properly Evaluated the Treating Source's Opinion.**

In evaluating a claim of disability, an ALJ "must consider all medical opinions in the record." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013); *See* 20 C.F.R. § 404.1527(b). The opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other

9

substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the ALJ does not grant a treating source's medical opinion controlling weight, then he must consider the following factors, including the examining relationship, treatment relationship, length and frequency of treatment, nature and extent of treatment, supportability, consistency, and specialization, among others. 20 C.F.R. § 404.1527(c). An ALJ who declines to give controlling weight to the opinion of a treating physician must offer "good reasons" that are "sufficiently specific" in explaining what weight, if any, he assigned it. 20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007); *Eakin*, 432 Fed.Appx. at 612.

Contrary to Claimant's assertion, the ALJ did not err in discounting Dr. Jayachandran's assessment and sufficiently articulated her reasons for doing so. The ALJ gave the doctor's assessment "no weight," finding that it was almost exclusively based on Claimant's subjective complaints and inconsistent with the record, including the doctor's own treatment notes. (R. 20.) Claimant however, argues that the ALJ reasoning is flawed given the nature of Claimant's impairments. While Claimant is correct that subjective complaints may play a particularly important role in the assessment and treatment of mental impairments, the Seventh Circuit has made clear that if a treating physician's opinion is "based solely on the patient's subjective complaints, the ALJ may discount it." *Bean v. Astrue*, No. 11 C 74, 2012 WL 3069190, at *10 (N.D. Ill. July 27, 2012)(quoting *Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008)).

Regardless, the ALJ did not discount Dr. Jayachandran's opinion simply because it was based on Claimant's subjective complaints. Instead, the ALJ concluded that Dr.

Jayachandran's opinion was inconsistent with the record, including his own treatment notes. *Johnson v. Berryhill*, No. 17-1696, 2018 WL 3855017, at *3 (7th Cir. Aug. 14, 2018)( "Medical evidence may be discounted if it is internally inconsistent.") For example, Dr. Jayachandran opined that Claimant would have "continual" episodes of decompensation." (R. 852.) There was, however, no evidence that Claimant was hospitalized; nor was there evidence of significant alterations in his medications. S*ee Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010)(noting that episodes of decompensation are temporary increases in symptoms, which can be inferred through hospitalizations and medication adjustments.) Likewise, as the ALJ pointed out, educational records also fail to support Dr. Jayachandran's limitations. Records describe Claimant as a good student who had excellent classroom behavior, was very respectful, and had many friends. (R. 331, 453, 471.) He was cooperative, courteous, prepared for class, got along with others, and was able to block out distractions. (R. 451.) Although Claimant received special services, school records indicate that by 2009, Claimant did not meet the criteria for emotional disability. (R. 524.) Ultimately, there was no evidence that Claimant experienced periodic exacerbations in symptoms.

Nevertheless, Claimant argues that the ALJ's reasoning was flawed because the ALJ "failed to identify any inconsistent medical evidence." (Mot. at 7.) To the extent that Claimant is arguing that the ALJ's decision was flawed because she did not cite evidence in the same paragraph in which she discussed Dr. Jayachandran's opinion, the Court notes that there is "no requirement of such tidy packaging." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010)(noting that the ALJ was not required to incorporate evidence within a single paragraph.) The ALJ discussed all the

evidence in the record, including Dr. Jayachandran's notes. (R. 18-20.) After summarizing the evidence, she explained that none of his treatment notes supported his limitations. Although the ALJ's discussion of the evidence was not optimally organized, she nonetheless sufficiently articulated her reasoning. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004)(explaining that courts will "give the opinion a commonsensical reading rather than nitpicking at it.")

Claimant further argues that Dr. Jayachandran's notes contain supportive clinical findings of depressed and anxious mood, and poor attention and concentration. (Mot. at 7.) While true, the non-specific findings cited by Claimant do not support a basis for overturning the ALJ's decision. When the "ALJ has considered the contrary evidence, then the Court 'must' defer to the ALJ's interpretation of that evidence so long as it was a reasonable interpretation." *Bahler-Kuhle v. Berryhill*, No. 16 CV 50370, 2018 WL 587148, at *4 (N.D. Ill. Jan. 29, 2018). Here, the Court cannot say that the ALJ's interpretation was unreasonable because the ALJ relied on the opinion of a medical expert at the hearing. *Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010)(upholding ALJ's RFC where a medical expert effectively translated claimant's mental limitations into an RFC assessment.) Thus, Claimant's argument amounts to nothing more than asking the Court to reweigh the evidence, something the Court will not do.

Finally, Claimant maintains that the ALJ should have re-contacted Dr. Jayachandran for clarification. (Mot. at 7.) The ALJ however, was not required to do so "because the record contained adequate information for the ALJ to render a decision." *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018)(citing *Skinner v. Astrue*, 478 F.3d

836, 843–44 (7th Cir. 2007)). Accordingly, this Court does not find that the ALJ's conclusion in this respect was in error.

**D. The ALJ Properly Evaluated the Medical Expert Opinion Evidence.**

Claimant also argues that the ALJ's decision to discount the opinion of Dr. Cermerus in favor of Dr. Rozenfeld's opinion was erroneous. The decision to "choose between conflicting medical reports rests with the ALJ." *Griffith v. Sullivan*, 916 F.2d 715 (7th Cir. 1990); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The decision however, must be supported by substantial evidence. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).

In this case, the ALJ concluded that Dr. Rozenfeld's more recent testimony was more consistent with the evidence. (R. 19-20.) Claimant maintains that the ALJ's reasoning is inadequate because she "never specifically explained why Dr. Rozenfeld's opinion was more consistent." (Mot. at 9.) The Court disagrees. The ALJ discounted Dr. Cermerus' opinion because it relied heavily on Claimant's subjective complaints. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013)( noting that an ALJ can discount a physician's opinion when it is based on claimant's subjective complaints.) A review of the transcript confirms that the doctor's opinion was largely based on testimony. Dr. Cermerus stated that Claimant had marked limitations in social interactions and concentration, persistence, or pace. (R. 69.) When asked by the ALJ to reconcile his opinion with the IEP, the doctor stated Claimant "probably did have people helping him out". (R. 70-71.) Yet, there was no evidence of one-on-one help in the IEP. (R. 111-12.) Likewise, when the ALJ asked him to justify his conclusion in light of Claimant's completion of the certified nursing assistant training, the ALJ responded by stating "my

guess probably…[they gave him accommodations]." (R. 71.) The ALJ concluded that Dr. Rozenfeld's opinion was more consistent with the evidence given Claimant's sporadic treatment history, lack of current medications, and good history of social interaction. (R. 19.) Faced with conflicting opinions, it was reasonable for the ALJ to choose the opinion that was better supported by the record. *See Cadenhead v. Astrue*, No. 05 C 3929, 2010 WL 5846326, at *18 (N.D. Ill. Mar. 5, 2010)(affirming the ALJ's decision to rely on one medical expert over the opinions of an examining source and second medical expert.)

Claimant also argues that the ALJ failed to develop the record because the ALJ did not obtain test scores form the junior college or vocational records form the high school. First, with respect to the vocational records, there is no evidence that they exist, outside of the testimony of Claimant's mother. *See Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.") Second, with respect to the test scores, the Claimant does not explain why the ALJ should have requested the records. The ALJ stated that the tests were not evaluations and provided little, if any, insight into Claimant's limitations. (R. 104.); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)( Courts "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather.")  Therefore, the ALJ's evaluation of the medical opinion evidence was not erroneous.

**E. The ALJ's Credibility Determination was Not Patently Wrong.**

Claimant next objects to the ALJ's evaluation of his subjective complaints. An ALJ is always required to "build a logical bridge between the evidence and his

conclusion" that a claimant's testimony is not credible. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir.2009). The ALJ should consider the entire case record and give specific reasons for the weight given to an individual's statements. SSR 96–7p; *See also Schmidt v. Barnhart,* 395 F.3d 737, 746 (7th Cir.2005)(stating that an ALJ must "articulate specific reasons for discounting a claimant's testimony as being less than credible"). Factors that should be considered include the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, the types of treatment received, any medications taken, and functional limitations. *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir.2006); *See also* 20 C.F.R. § 404.1529(c)(3); SSR 96–7p. A court is obligated to review the ALJ's credibility decision with deference because "the ALJ is in the best position to determine the credibility of witnesses." *Craft,* 539 F.3d at 678. A reviewing court must be mindful that reversal on this ground is appropriate only if the credibility determination is so lacking in explanation or support that it is "patently wrong." *Elder v. Astrue,* 529 F.3d 408, 413–14 (7th Cir. 2008).

Claimant maintains that he cannot work due to his anxiety disorder, learning disability, and depression. These conditions, he testified, impair his ability to follow directions. (R. 42.) Consequently, he becomes frustrated and "shuts down" because he is afraid of what people will say. (R. 42-43.) Relying on SSR 96-7p[8], the ALJ concluded

---

[8] Claimant objects to the ALJ's use of 96-7p and insists that 16-3p applies. The ALJ issued her decision on December 19, 2014. Since the ALJ issued her decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1. However, the SSA recently clarified that Courts should only apply SSR 16-3 to determinations made on or after March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Here, we continue to assess the ALJ's findings under SSR 96-7p, which notably is not "patently inconsistent" with SSR 16-3. *Shered v. Berryhill*, 16 CV 50382, 2018 WL 1993393, at *5 (N.D. Ill. April 27, 2018)(internal quotations omitted).

that Claimant's allegations were not so severe that they rendered him unable to work. (R. 20.) The ALJ found that Claimant's activities of daily living, conservative treatment, inconsistent testimony, and non-compliance with medication weighed against his testimony. (R. 21.) Based on the record before the Court, we agree that the ALJ properly followed the requirements of SSR 96-7p. *McBride v. Berryhill*, No. 16 CV 9487, 2018 WL 3344406, at *6 (N.D. Ill. July 9, 2018).

Claimant argues, in part, that the ALJ "overstated the significance of [Claimant's] failure to pursue emergency room treatment" given the cost of such services. (Mot. at 14.) This error was harmless as the ALJ's reasoning was based also "on the absence of evidence of serious functional limitations due to… episodes of decompensation." *Kittelson v. Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010). Claimant also argues that the ALJ impermissibly relied on his activities of daily living. Although the ALJ cited some of Claimant's activities of daily living in discrediting some of the alleged limitations, the ALJ did not improperly equate the ability to complete such activities with the ability to engage in full-time work. In fact, the ALJ acknowledged that Claimant's activities were "not conclusive proof that he is able to sustain full-time work" and instead noted that they weighed against the credibility of his allegations. (R. 20.) The ALJ discussed how Claimant's activities of daily living, which included social interactions at school, conflicted with his reports of severely limiting anxiety. Further, the ALJ did not place an undue weight on Claimant's daily activities as he provided other valid reasons for his adverse credibility determination. *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)(noting that even though the ALJ analysis of "activities of daily living was not ideal, the ALJ provided a sufficient basis for his adverse credibility determination.") For

example, the ALJ discounted Claimant's testimony, in part, because treatment has been routine and conservative, involving medication and sporadic visits to therapy. *See Hofslien v. Barnhart*, 172 F. App'x 116, 120 (7th Cir. 2006)(noting that the type of treatment that a claimant receives is a factor which may be considered in determining disability.); *Tonelli v. Colvin*, No. 13-3041, 2016 WL 777880, at *4 (C.D. Ill. Feb. 29, 2016).

The ALJ also discounted Claimant's testimony because he admitted he was not taking any medication at the time of the supplemental hearing. (R. 21.) An ALJ may consider evidence of non-compliance with medical advice when assessing credibility. *McBride*, 2018 WL 3344406, at *6 (citing SSR 96-7p). Claimant did not explain why he was not on medications, and treatment notes indicate he denied side-effects. (R. 856.) Therefore, the ALJ's credibility determination was not patently wrong as she provided enough sound reasons to support her conclusions. *See Halsell v. Astrue*, 357 Fed.Appx. 717, 722–23 (7th Cir. 2009)( "Not all of the ALJ's reasons must be valid as long as enough of them are.")

Claimant also argues that the ALJ's analysis of third party statements is flawed because she did not discuss them separately. The ALJ found the statements to be "partially credible" because, while they were generally consistent with those of the Claimant, they lacked objective support from the record. (R. 21.) An ALJ, "need not provide a written evaluation of every piece of evidence." *Rice*, 384 F.3d at 371. Rather, the ALJ need only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." The Court finds that the ALJ met the low threshold in

this case and built the request logical bridge. Consequently, Claimant's argument that the ALJ's credibility determination was flawed fails.

## III. Conclusion

For the foregoing reasons, Claimant's a motion for summary judgment [6] is denied and the Commissioner's cross-motion for summary judgment [26] is granted.

**ENTERED:**

_____
**Michael T. Mason**
**United States Magistrate Judge**

**Dated: September 21, 2018**